# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| KENDRICK BUGG, | Case Nos. 1:06-cr-135; 1:14-cv-339 |
| *Petitioner*, | |
| | Judge Travis R. McDonough |
| v. | |
| | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | |
| *Respondent*. | |

## MEMORANDUM OPINION

Before the Court is Petitioner's supplemented pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 100 (original petition); Doc. 112 (first amended petition); Doc. 113 (second amended petition); Doc. 119 (supplement)). The United States responded in opposition to the original petition on December 24, 2014 (Doc. 103), and the supplemented petitions on July 25, 2016 (Doc. 115). Petitioner replied to the first response on January 30, 2015 (Doc. 105), but did not reply to the second response within the time allowed for doing so. E.D. Tenn. L.R. 7.1, 7.2. For the reasons discussed below, Petitioner's supplemented § 2255 motion (Docs. 100, 112, 113, 119) will be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

On December 29, 2001, storeowner Charles White and his employee Gary Talley were seated on opposite sides of a desk in the rear of a Western Auto store, eating their breakfast, when a man wearing a hat entered the store and went down a "far, far aisle" (Doc. 71 pp. 55,

76).¹  The man ran up to the desk, held a black gun to Talley's head, and announced, "robbery"

(*Id.* at 55, 57, 66, 68–69, 72, 75–76).²  The masked robber then ordered White and Talley to lie face-down on the floor and restrained their hands and feet with duct tape (*Id.* at 55–56, 64–65, 72–73, 77).  The robber grabbed White's billfold, looked inside it for cash, and took a gold ring from White (*Id.* at 56, 70).  The robber then asked how to open the cash registers, and White said to "pull the lever" (*Id.* at 55, 64).³  At trial, White estimated that the robber did not get more than "a few hundred dollars" from the registers, because it was early in the day (*Id.* at 58).  The robber also "jacked (the) gun back," chambering a round of ammunition, and asked how to open the safe, but White and Talley insisted that they did not know the combination (*Id.* at 55–56, 64–67, 73, 76).

Just before leaving, the robber grabbed a bottle of hand lotion from behind the counter and squirted lotion over the cash registers, then ripped the telephone from the wall and threw it to the floor (*Id.* at 56, 60–61, 63–64, 66, 74–75).  White and Talley eventually freed themselves from the duct tape and phoned the police (*Id.* at 68, 77).

Detective Michael Early responded to the scene of the robbery and collected evidence, including the lotion bottle and three pieces of duct tape (*Id.* at 82–84).  Although no fingerprints could be lifted from the cash registers in the store because of the lotion being "squirted all over,"

---

¹ During trial, the United States presented evidence that the store was stocked with items that had traveled in interstate commerce (Doc. 71 pp. 53–55, 72).

² During their trial testimony, White and Talley were shown a black .380 caliber semi-automatic pistol—used only for identification purposes and not entered into evidence—and both agreed that it looked "just like" the one used in the robbery (Doc. 71 pp. 69, 75).

³ At trial, White explained that the store had "old-timey cash registers" that opened merely by pulling a lever (Doc. 71 pp. 55, 64).

or from White's wallet, because of its coarse leather-grain surface, Police Sergeant Darrel Whitfield lifted three latent fingerprints from the lotion bottle and submitted them for analysis (*Id.* at 118–20, 123–29). Lori Uhle, a scientist from the FBI laboratory, analyzed the prints lifted from the lotion bottle, determined that only one was usable, and identified it as Petitioner's right thumb print; another examiner independently verified that conclusion (*Id.* at 129–30, 136–38, 140).

On December 12, 2006, a grand jury charged Petitioner with robbing the Western Auto store on December 29, 2001, in violation of 18 U.S.C. § 1951, and brandishing a firearm during and in relation to that crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Doc. 1). Before trial, the United States filed notice of its intent to present evidence, pursuant to Federal Rule of Evidence 404(b), of Petitioner's involvement in three other armed robberies, on February 26, 2002, March 7, 2002, and March 8, 2002 (Doc. 24).[4] The United States explained that the evidence was relevant to establish petitioner's identity and to demonstrate a unique modus operandi (*Id.* at 3–4).

During *voir dire*, defense counsel informed the prospective jurors that the United States intended to present "proof (that) doesn't have anything to do with this robbery" (Doc. 70 p. 37). Defense counsel then asked, "because somebody is accused of doing something at another time, in your opinion does it make it more likely that they did something before that's similar? Is everybody willing to give (Petitioner) the benefit of the doubt that just because he may have done something later, he didn't do this one?" (*Id.* at 38). None of the prospective jurors indicated any difficulty in evaluating (Petitioner's) guilt as to the charged offense alone (*Id.*).

---

[4] Petitioner had already been convicted for his role in the March 8, 2002 robbery. *See United States v. Bugg*, 105 F. App'x 25 (6th Cir. 2004).

3

During opening statements, after summarizing the evidence of Petitioner's guilt, the prosecutor mentioned that the jury "may well hear proof of three other robberies (Petitioner) was involved in, one he's already been convicted of, and duct tape and a firearm were found in his car at that point in time, and two that he's never been charged with . . . , (where) two men went in wearing masks, waving guns around, got money out of the cash registers, and taped the victims . . . up with duct tape behind their back" (Doc. 71 p. 51). The prosecutor continued, without any objection from Petitioner:

> I anticipate you might well hear from (Petitioner's) uncle, Carl Fritz, who . . . (has) been convicted of a robbery and a gun charge . . . and is now cooperating with the United States. . . . I anticipate that, if he testifies, he'll tell you that he's the one who duct-taped the people at the (two uncharged robberies), because he robbed them with Mr. Bugg, (who) came in and supplied guns, masks, and this duct tape, and instructed Mr. Fritz on how you duct-tape somebody. . . . I anticipate you may well hear that . . . that was his M.O., his modus operandi, that's how Mr. Bugg robbed people, robbed stores, and he instructed his uncle Carl Fritz on how to do it.

(*Id.* at 51–52). In response, defense counsel stated that the only evidence linking Petitioner to the charged robbery was a single fingerprint (*Id.* at 52–53). Petitioner subsequently objected to the admission of any evidence regarding the 2002 robbery, and the Court excluded the evidence, on the ground that its prejudicial effect would outweigh its probative value (*Id.* at 84–85, 96–97, 114–17). At the close of trial, the jury convicted Petitioner as charged (*Id.* at 171–73). At no point before the verdict was a judgment of acquittal requested under Federal Rule of Criminal Procedure 29 (*Id.* at 142–43).

Under the 2008 version of the Sentencing Guidelines, the base offense level for a Hobbs Act robbery is twenty, enhanced by two levels to twenty-two, pursuant to U.S.S.G. § 2B3.1(4)(B), because petitioner physically restrained his victims (Presentence Investigation Report (PSR) ¶¶ 11, 12, 14). Based on two prior felony convictions for robbery, the United

4

States Probation Office (USPO) deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines with a corresponding offense level of thirty-two (*Id.* ¶¶ 22, 33, 34). Petitioner's twelve criminal history points yielded a criminal history category of V, enhanced to VI by his career-offender classification (*Id.* ¶ 38). The Guidelines range for the Hobbs Act robbery, given the career-offender classification, was 210 to 262 months' imprisonment (*Id.* ¶¶ 23, 68). The § 924(c) offense carried a statutorily mandated consecutive term of twenty-five years' imprisonment because Petitioner had a prior conviction for violating § 924(c) (*Id.* at ¶¶ 19, 23, 67, 68). Together, the offenses yielded an effective Guidelines range of 510 to 562 months (*Id.*).

Petitioner objected to "any reference in the PSR . . . implicating him in the instant offense" (Doc. 54 p. 1). He also suggested that his sentence for the instant § 924(c) conviction should run concurrently with the sentence he was then serving for his earlier § 924(c) conviction because, in his view, the offenses were related and had merely been prosecuted separately (*Id.* at 1–3; Doc. 53 (asking the Court to run the sentence for his instant convictions concurrently with the sentence for his prior robbery conviction because his existing sentence adequately satisfied the § 3553(a) factors)). The USPO responded by noting the absence of any evidence linking Petitioner's robbery of the Western Auto on December 29, 2001, to his subsequent robbery of a convenience store on March 8, 2002, for which he had been convicted in 2002 (PSR Addendum).

In a series of motions, Petitioner argued that he should have been indicted for both robberies at the same time, and that, because the government did not do so, the indictment should be dismissed as vindictive or, at the very least, he should not be sentenced as a career offender,

which he characterized as a double jeopardy violation (Doc. 51).[5] He also moved for a downward departure, citing the same reasons and arguing that "the government . . . held back this Indictment, stripped away (his) ability to receive any benefit of the grouping rules . . . in the Guidelines, and ultimately caused him to receive a much harsher sentence" (Doc. 52 p. 2).

The United States responded that the prosecutor who brought the instant charges was not involved in the initial prosecution of Petitioner, and that, although Petitioner was invited to cooperate after the instant charges were filed, no further charges were filed when he declined to do so, even though Petitioner had been implicated in at least six other armed robberies during that time period (Doc. 55 p. 2). "(T)hat (Petitioner) face(d) a significant sentence for his crimes is no indication or proof of prosecutorial vindictiveness," and "the fact that (he) robbed multiple establishments with a similar modus operandi does not insulate him from prosecution for each of the robberies" (*Id.* at 6–7). Indeed, "there was no prosecutorial advantage gained by the delay in (the) indictment" (*Id.* at 9), and Petitioner sustained no prejudice (*See generally* Doc. 55).

On July 23, 2009, the Court sentenced Petitioner to 510 months' imprisonment: 210 months for the robbery, followed by 300 months for the § 924(c) offense (Doc. 62). The Court ordered that Petitioner serve 500 months of his sentence consecutive to any existing state or federal sentence of imprisonment, with the remaining 10 months served concurrently (*Id.* at 2).

---

[5] Petitioner emphasized that law enforcement agents had determined that the firearm he used for the March 2002 convenience-store robbery was also used two months earlier to murder the owner of the Leisure Time Dive and Ski Shop, and that agents repeatedly and unsuccessfully attempted to procure his cooperation with their murder investigation (Doc. 51 pp. 2–3). In his view, he was indicted for the Western Auto robbery because he had exercised his constitutional rights to remain silent regarding the unsolved murder, to proceed to a jury trial on the convenience-store robbery, and to appeal the resulting conviction (*Id.* at 4–6). He also noted that he was already serving a lengthy sentence for his March 2002 offenses when indicted for the instant offense (*Id.*).

Petitioner appealed, and the Sixth Circuit Court of Appeals affirmed his convictions but vacated his sentence and remanded for resentencing because, in its view, the record was unclear about whether this Court fully considered Petitioner's arguments for a fully concurrent sentence for the Hobbs Act robbery. *United States v. Bugg*, 483 F. App'x 166 (6th Cir. 2012). In November of 2012, the Court reimposed the same sentence (Doc. 91). Petitioner appealed again, and on September 13, 2013, the Sixth Circuit affirmed his sentence (Doc. 96); the Supreme Court subsequently denied his request for a writ of certiorari on January 14, 2014 (Doc. 99).

On November 24, 2014, Petitioner submitted the instant timely petition to vacate, set aside, or correct his sentence (Doc. 100). On June 24, 2016, and June 27, 2016, respectively, Petitioner filed his first and second amended petitions (Docs. 112, 113). Both amended petitions contained a single timely request for collateral relief based on an intervening Supreme Court decision. He recently filed a supplement reiterating his desire for relief under the amended petition (Doc. 119).

## II.     SUPPLEMENTED PETITION FOR COLLATERAL RELIEF

### A.     Standard of Review

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## B. Analysis

As supplemented, the petition contains six discernable grounds for collateral relief. In the first and second grounds, Petitioner challenges the validity of his § 924(c) conviction based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague (Ground One), and *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014) (Ground Two) (Docs. 112, 113, 119 (suggesting that the similarly worded residual clause in § 924(c) is equally vague)). In the remaining grounds, Petitioner alleges ineffective assistance of counsel. He argues that counsel rendered constitutionally deficient assistance by: not filing a pre-trial motion to dismiss the indictment based on an alleged violation of Petitioner's speedy trial rights (Ground Three) (Doc. 100 pp. 3–5); not filing a motion in limine to exclude evidence about Petitioner's prior robbery conviction and other uncharged robberies, i.e., Rule 404(b) evidence (Ground Four) (*Id.* at 4–5); not filing a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 (Ground Five) (*Id.* at 5–6); and not arguing that the use of prior convictions to enhance Petitioner's sentence violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013) (Ground Six) (*Id.* at 6–7; Doc. 101 pp. 2–5).

### 1. Grounds One and Two: Allegations of Legal Error

#### i. Ground One: Validity of § 924(c) Conviction After *Johnson*

Petitioner argues that *Johnson* invalidated the similarly worded residual clause in § 924(c)(3)(B)'s definition of crime of violence and that the absence of that provision requires vacatur of his conviction under § 924(c)(1)(A) because Hobbs Act robbery only qualified as a

crime of violence under the now-defunct residual provision.[6] The argument fails because binding Sixth Circuit precedent holds that while *Johnson* invalidated the residual provision of the ACCA, § 924(c)(3)(B)'s definition of crime of violence remains unaffected. *See United States v. Taylor*, 814 F.3d 340, 376–79 (6th Cir. 2016) (recognizing at least four "significant differences" between the residual clause in § 924(c)(3)(B) and the ACCA's residual clause and noting "the argument that *Johnson* effectively invalidated (the former) is . . . without merit"). As such, Hobbs Act robbery remains a crime of violence capable of supporting his conviction under § 924(c)(1)(A).

### ii. Ground Two: Validity of § 924(c) Conviction After *Holloway*

In conjunction with his references to *Johnson*, Petitioner repeatedly cites *United States v. Holloway* as justification for the requested relief. To the extent that he seeks the same leniency

---

[6] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in the *Johnson* decision. 135 S. Ct. at 2563.

Section 924(c)(1)(A) makes it a crime for an individual, "in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, (to) use(,) carr(y) (or possess) a firearm . . . in furtherance of . . . such crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) goes on to define "crime of violence" as any "felony" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (use-of-physical-force clause); or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" ("residual clause").

extended to Mr. Holloway, he ignores the fact that he and Mr. Holloway are not similarly situated.

Aided by a co-defendant, Holloway "stole three cars at gunpoint" in two days in 1994. *Holloway*, 68 F. Supp. 3d at 312. Convicted of three carjackings and corresponding § 924(c) offenses, he was sentenced to 691 months' imprisonment under then-mandatory guidelines and statutory minimums. *Id.* Twenty years later, at age 57, Holloway had incurred only five disciplinary infractions, all of which were minor, and three of which occurred during his first six years of imprisonment; he had been completely incident-free for four years. *Id.* at 314. In light of Holloway's rehabilitative efforts and the fact that three of the carjacking victims supported his release, in addition to the amount of time he had already spent in custody, the United States agreed to vacate two of Holloway's § 924(c) convictions, thereby allowing Holloway to be released from custody. *Id.* at 315. Here, Petitioner has not been convicted of multiple § 924(c) counts in a single prosecution. Moreover, according to the Bureau of Prisons, Petitioner has incurred disciplinary sanctions on fourteen separate occasions, including as recently as November of 2015.

Even if Petitioner were identically situated to Holloway—he is not—there is no legal basis upon which he could compel a lesser sentence. In *Holloway*, the Department of Justice agreed to exercise its authority to demonstrate leniency. As the district court in that case recognized, such authority "will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly." *Holloway*, 68 F. Supp. 3d at 316. They have not done so here.

## 2. Grounds Three, Four, Five, and Six: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for (counsel's acts or omissions), the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient.

### i. Ground Three: Speedy Trial Violation

Petitioner argues that the United States violated his rights when it waited four years and eleven months—shortly before the relevant statute of limitations expired—to indict him. He claims that counsel should have filed a pre-trial motion to dismiss the indictment on that basis.

In evaluating a Sixth Amendment speedy-trial claim, a court considers four factors: (1) the length of delay, (2) the reason for the delay, (3) a defendant's assertion of his right, and (4)

any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor establishes a constitutional speedy trial violation. *United States v. Gardner*, 488 F.3d 800, 719 (6th Cir. 2007). Rather, a court must "conduct a balancing analysis that considers each of these factors along with such other circumstances that may be relevant." *Id.*

To the extent that Petitioner challenges the duration between his indictment and arraignment, that claim was rejected by the Sixth Circuit on direct appeal. *Bugg*, 483 F. App'x at 171 (holding that Petitioner's "right to a speedy trial was not violated"). Absent exceptional circumstances, such as an intervening change in law, a § 2255 motion cannot be used to relitigate issues decided on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). Because Petitioner has not identified any such exceptional circumstance in the instant case, this Court lacks authority to review the claim.

To the extent that Petitioner challenges the length of time between his commission of the offense and his indictment, i.e., asserts a claim involving pre-indictment delay, this Court finds that no speedy trial violation resulted. To prevail on a claim involving pre-indictment delay, a defendant must establish that "(1) his right to a fair trial was substantially prejudiced by the delay, and (2) the government intentionally caused the delay in order to gain a tactical advantage over him," i.e., that the government had no valid reason for the delay. *United States v. Wade*, 93 F. App'x 874, 876 (6th Cir. 2006) (citing *United States v. Marion*, 404 U.S. 307, 324 (1971)). Here, Petitioner has not satisfied either prong of the *Marion* test. Stated another way, he has not identified any way in which his ability to present a defense at trial was actually compromised or hindered by the delay, nor has he proven that the delay was intentional.

As an initial matter, Petitioner sought to litigate a similar claim in a presentence motion when he claimed that the pre-indictment delay evidenced prosecutorial vindictiveness (Doc. 51).

12

The Court denied that motion because Petitioner had not identified any legal authority suggesting that successive prosecution for an unrelated offense after a guilty verdict in another prosecution served as proof of prosecutorial vindictiveness (Doc. 73 pp. 6–9, 14–21 (finding that "the only thing that we have here is a very, very weak inference that because (Petitioner was) facing more time (in prison) . . . that the government may have had an improper motive. That's (an) inference that this Court finds too weak")). Petitioner has not provided and this Court is unaware of any new or additional information suggesting that the only possible explanation for the pre-indictment delay is that the government intentionally sought a tactical advantage.

Additionally, this Court does not believe that Petitioner incurred prejudice because of the delay.[7] Petitioner has not identified and this Court is unaware of any witnesses he was unable to call or evidence he could not produce at trial because of the delay. Regardless, the Sixth Circuit has previously held that even the death of a potential witness during the pre-indictment period does not demonstrate the requisite prejudice, absent proof about how the deceased would have testified and that the substance of the testimony was not otherwise available. *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir. 1997) ("Even where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove."). Because Petitioner has not identified any material evidence that could have been presented in his defense at trial if the indictment had been returned earlier, he has not shown that the delay violated his constitutional rights, nor that counsel was ineffective for failing to request dismissal of the

---

[7] Petitioner asks that this Court deem him "presumptively prejudiced" (Doc. 100 p. 5). To the extent that he is referencing the presumptive prejudice that the Sixth Circuit applied to the sixteen-month delay between petitioner's indictment and arraignment, *see Bugg*, 483 F. App'x at 169–70, he ignores the fact that the Sixth Circuit found that his "Sixth Amendment right to a speedy trial was not violated" by that period of delay. *Id.* at 171.

indictment on that basis. *See United States v. Labine*, Nos. 88-1145, 88-1146, 1989 WL 72473, at *3 (6th Cir. July 3, 1989) ("Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice stemming from pre-indictment delay.") (quoting *United States v. Brown*, 742 F.2d 359, 362 (7th Cir. 1984)).

### ii. Ground Four: 404(b) Evidence

Petitioner faults counsel for not filing a motion in limine to exclude evidence about Petitioner's prior robbery conviction and other uncharged robberies after receiving advance pre-trial notice of the United States' intent to introduce the same. He appears to suggest that, had counsel done so, the United States would not have been able to reference the prior convictions in its opening statement and the jury would not have returned a guilty verdict in the instant case. The challenge fails because Petitioner has not established that the prosecutor's reference to those prior robberies shaped the jury's verdict or that he was prejudiced by counsel's failure to object to the same. The Court repeatedly instructed the jurors that the opening statements were not evidence (Doc. 71 pp. 44–45, 58; Doc. 72 p. 158 ("The evidence in this case includes only what the witnesses said while they were testifying under oath and the exhibits that [the Court] allowed into evidence. Nothing else is evidence. The lawyers' statements and arguments are not evidence.")). Juries are presumed to follow the instructions that they are given by the district court, *see, e.g.*, *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005); *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001), and Petitioner has not identified any basis to disturb that presumption.

14

### iii.      Ground Five: Rule 29 Judgment of Acquittal

Petitioner argues that counsel should have moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The rule provides that "(a)fter the government closes its evidence or after the close of all the evidence . . . (the defendant can move for) a judgment of acquittal (on) any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

The Sixth Circuit considered the sufficiency of the evidence on direct appeal and affirmed Petitioner's convictions. *Bugg*, 483 F. App'x at 172. Because sufficient evidence supported his conviction,[8] Petitioner cannot show that the proposed Rule 29 motion would have prevailed or that the absence of that motion resulted in prejudice. *See United States v. Mathis*, 738 F.3d 719, 735 (6th Cir. 2013) (describing the standard for a Rule 29 motion and a sufficiency claim as identical).

### iv.      Ground Six: Enhancement Based on Prior § 924(c) Offense

In his sixth and final ground, Petitioner claims that enhancing his sentence based on prior convictions which were "neither incorporated in the indictment nor submitted to a jury" violated *Alleyne*, and that trial and appellate counsel were ineffective for failing to raise the issue.

---

[8] The evidence at trial was that a masked robber entered the Western Auto store—a store which stocked items from out-of-state suppliers, and ran up to White and Green while brandishing a gun and announcing a robbery (Doc. 71 pp. 55, 68–69, 72, 75–76). After ordering the victims to the floor and duct-taping their hands and feet, the robber opened two cash registers, stole the case therein, and then grabbed a bottle of lotion from behind the counter, where it was only accessible to store employees, and squirted lotion onto the cash registers (*Id.* at 55–58, 60–61, 63–66, 72–75, 77). Two fingerprint examiners identified a fingerprint on the lotion bottle as Petitioner's right thumbprint and records demonstrated that Petitioner had never worked at the store (*Id.* at 57–58, 74–75, 128–30, 136–38). Faced with the foregoing facts, reasonable jurors could have concluded that the only plausible explanation for the thumbprint was that Petitioner was the masked robber.

15

In *Almendarez-Torres v. United States*, the Supreme Court held that a prior conviction may be introduced at sentencing to enhance statutory punishment without offending a defendant's constitutional rights. 523 U.S. 224, 239–47 (1998). Two years later, the Supreme Court held that, "(o)ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 446 (2000); *but see Booker v. United States*, 543 U.S. 220, 244 (2005) (reiterating that the fact of a prior conviction is exempt from the general rule that all penalty-enhancing facts must be presented to a jury and proven beyond a reasonable doubt). Relying on its holding in *Apprendi*, the Supreme Court held in *Alleyne* that any fact that increases a statutory mandatory minimum is an "element" of the offense which must be found by a jury or admitted by the defendant. 133 S. Ct. at 2155 (overruling *Harris v. United States*, 536 U.S. 545 (2002), which had held that an increased mandatory minimum was merely a sentencing factor).

Petitioner's reliance on *Alleyne* as a basis for vacating his sentence fails because prior convictions were excluded from the "facts" referenced in *Alleyne*, 133 S. Ct. at 2160 n.1, and thus remain an appropriate subject for judicial fact finding at sentencing per *Almendarez-Torres*, 523 U.S. at 239–47. Because the objection would have been denied, counsel cannot be faulted for failing to raise it. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to raise a meritless objection).

## IV. CONCLUSION

For the reasons discussed, Petitioner's supplemented § 2255 motion (Docs. 100, 112, 113, 119) will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**